**Robert E. GIBSON, Trustee, Plaintiff,**

v.

**Wade Lee BARBER & Jewel Ann Barber, Defendants.**

**Bankruptcy No. 88–9023 (87–07184).**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Aug. 10, 1989.

Robert E. Gibson, Tallahassee, Fla., Trustee.

Marc E. Taps, Legal Services of N. Florida, Inc. Tallahassee, Fla., for defendant.

MEMORANDUM OF OPINION

LEWIS M. KILLIAN, Jr.,
Bankruptcy Judge.

THIS CASE was tried on July 7, 1989, upon the Complaint to Revoke Discharge filed by the Chapter 7 trustee, Robert Gibson. This Court has jurisdiction over this matter and this is a core proceeding. The trustee's complaint alleges that the debtors obtained their discharge through fraud by failing to disclose in their schedules and statement of financial affairs their pre-petition transfer of an automobile and that they fraudulently failed to disclose that they did not have financial records to account for the disposition of more than $14,-000 that they had received in the three months immediately prior to the filing of their petition. No evidence was offered at

trial with respect to the automobile and the trustee has apparently abandoned that aspect of this case.

The debtors filed their petition under Chapter 7 of the Bankruptcy Code on July 2, 1987, and received a discharge on October 22, 1987. During the course of administering the estate, the trustee requested and obtained various banking records from the debtors. On October 23, 1987, in response to his letter dated October 13, the trustee received from Apalachee Bay Bookkeeping Services copies of receipts and disbursement checks from the debtor, Wade Barber's escrow account. This account was apparently set up to handle the sale by Mr. Barber in March, 1987 of his shrimp boat, the "Jewel Ann". Those records disclosed that Wade Barber had received into his escrow account with Apalachee Bay Bookkeeping a total of $19,569.92 between March 16, 1987 and May 27, 1987.

After receiving the information from the bookkeeping service, the trustee, on October 27, 1987, sent a letter to the Barber's attorney requesting that Mr. Barber produce records to show the disposition of the funds he had received from the sale of the "Jewel Ann."[1] Additional correspondence transpired between the trustee and the debtors' attorney whereby the debtors' attorney attempted to account for the disposition of the funds. These explanations, however, were incomplete and did not satisfy the trustee. No records were produced. The trustee filed this complaint on February 25, 1988, seeking revocation of the debtors' discharge. The trustee's complaint alleges, *inter alia* that:

B. The debtors fraudulently failed to reveal in their schedules and statement of financial affairs filed in this case that Debtors did not have financial records and Debtors now have failed and refused, after repeated requests to do so, to account for more than $14,000 received in the three months immediately prior to the filing of their petition.

In their answer to the complaint, the debtors alleged that they have been unable to produce all of the bills or receipts for the funds due to a fire which destroyed them. The fire, which the debtors claim destroyed their records occurred on October 17, 1987.

The sole factual issue presented at trial was that of whether or not the debtors' records were, in fact, destroyed by the fire. The trustee's position was that the records either did not exist or that the debtors had destroyed them. Since the debtors had responded in item 5 of their Statement of Financial Affairs for Debtor Not Engaged in Business that they had in their possession "Records for income tax purposes only," the trustee contends that they have obtained their discharge fraudulently through their concealment of the fact that they did not have books and records.

■ Revocation of a discharge is permitted under 11 U.S.C. § 727(d)(1) if

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

In order for the trustee to obtain revocation of discharge for reasons of fraud, the debtor must have committed a fraud in fact which, if known to the Court prior to the entry of the discharge, would have barred the discharge. *In re Peli*, 31 B.R. 952 (Bankr.E.D.N.Y.1983), 4 Collier on Bankruptcy, ¶ 727.04 (15th Ed.) The intentional omission of assets and disclosure of grounds which would have barred discharge justify revocation of a discharge. *In re Daugherty*, 14 B.R. 1 (Bankr.S.D.Fla. 1981).

■ In the instant case, the trustee has chosen to focus entirely on the existence or non-existence of certain records which he did not even request from the debtors until after they had received their discharge. Apparently, the trustee's position is that since the particular items he has requested were not available, the debtors lied when they said in their statement of affairs that they had "Records for income tax purposes only." It is clear that the debtors were not

---

1. The schedules filed with the debtors' petition reflected that the debtors had only $10.00 cash and nothing in deposits when they filed their petition for relief.

totally without records. They produced for the trustee, as requested, copies of their bank statements for the six months prior to their bankruptcy. They also, apparently, furnished the trustee with their copies of their tax returns for the two prior years. Their bookkeeping service provided the trustee with receipt and disbursement records from the sale of the "Jewel Ann." Thus, we cannot find that the debtors lied when they said they had records, because they did. They simply did not have the records to satisfy the trustee.

The trustee's focus on the records in this case is misplaced. The real issue should have been what actually happened to the funds the debtors received prior to the bankruptcy. There was, however, no evidence or argument presented to show that the debtors, prior to receiving their discharge, did anything to conceal or misrepresent any facts regarding the sale of the boat or the disposition of the funds. Apparently, the trustee made no inquiry regarding these matters until his October 27th letter. Even then, the trustee insisted on records rather than explanations. At no time did he seek to conduct an examination of the debtors pursuant to Bankruptcy Rule 2004 in order to ascertain how the money had been spent. Even during the course of this adversary proceeding, when the trustee took the debtors' depositions, he did not ask the debtors about how they spent the money. All he asked about was the records and the fire.

Finally, at trial, the trustee asked specifically about where the money went. With respect to some $7,000 cash received approximately two weeks prior to the bankruptcy, Mr. Barber forthrightly and without hesitation testified that he had given it to his son who had provided him with funds earlier when he was attempting to obtain a loan from P.C.A. It was Mr. Barber's view that the money was his son's and that he had "just been using it." While this transaction may appear to be very suspicious, there is no evidence that it was accompanied by any fraudulent intent on Mr. Barber's part or that he affirmatively attempted to conceal it. His demeanor in providing this information at trial indicated that he saw nothing wrong with it.

In sum, we can not find, from the evidence presented, that these debtors' discharge was obtained by fraud merely because they may not have had complete records of all of their financial transactions when they responded on their statement of affairs that they had some records. Whether or not some records burned in a fire is not determinative of the outcome of this case. The trustee's difficulties in determining the disposition of the funds received by the debtors prior to their bankruptcy arose from his dogged insistence on their production of records instead of simply sitting down and asking for an explanation.

Accordingly, the Complaint to Revoke Discharge will be denied and the debtors' discharge will stand.

A separate judgment will be entered in accordance herewith.